# United States Court of Appeals
## For the First Circuit

No. 03-1722

YUSUFU BILLY SETTENDA and MARIA RHITA NABAWANGA,

Petitioners,

v.

JOHN ASHCROFT, Attorney General,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Selya, Lynch, and Lipez, <u>Circuit Judges</u>.

<u>William E. Graves, Jr.</u>, with whom <u>Kerry E. Doyle</u> and <u>Graves & Doyle</u> were on brief, for petitioners.

<u>Shelley R. Goad</u>, Attorney, Civil Division, with whom <u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, and <u>Linda S. Wendtland</u>, Assistant Director, Office of Immigration and Litigation, were on brief, for respondent.

August 2, 2004

**LIPEZ**, <u>Circuit Judge</u>.  Yusufu Billy Settenda and Maria Rhita Nabawanga, natives and citizens of Uganda, seek review of the decision by a single member of the Board of Immigration Appeals (BIA) to deny their applications for asylum under the Immigration and Nationality Act (INA) § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and relief under Article 3 of the United Nations Convention Against Torture (CAT).[1]  We deny the petition.

## I.

Settenda and Nabawanga traveled separately from Uganda to the United States on business visas in 1999.  The following year, the INS charged them both as being removable from the United States under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as aliens who remained beyond the time authorized.  Petitioners conceded that they were removable as charged and applied for asylum, withholding of removal, and protection under CAT.  During several merits hearings before the Immigration Judge (IJ), Settenda claimed that he was a member of the Ugandan Internal Security Organization (ISO), and, in that capacity, had been assigned to investigate the

---

[1]The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, was implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub.L. No. 105-277, § 2242, 112 Stat. 2681-761 (codified at 8 U.S.C. § 1231 (2000)).

death of Ugandan Prince Charles Happy Kiganangoma.[2] Settenda testified that his investigation implicated certain high-level government officials in the Prince's death, including his immediate superior at ISO. Settenda claimed that he was threatened and that two attempts were made on his life as a result of his investigation. Further, Settenda attested that because of the information he possessed about governmental involvement in Prince Kiganangoma's death, he feared persecution and torture by government officials should he return to Uganda.

After the merits hearings, the IJ found that Settenda's testimony lacked credibility, was inconsistent and implausible on key points, and was not supported by the submitted documentary evidence. After citing several portions of Settenda's testimony and their deficiencies, the IJ stated that she "believe[d] [Settenda] is afraid to return to Uganda but the true reasons for his fear and the exact nature of the harm he fears had not been presented to this Court in a straightforward or truthful manner." The IJ found that Settenda "provided information and evidence which is not correct or truthful concerning his investigation into a highly publicized political murder." Finally, again citing specifically to portions of Settenda's testimony that were inconsistent, implausible, or both, the IJ stated that "[b]ased on

---

[2]Nabawanga's asylum claim is derivative of Settenda's application, and so we treat Settenda as the lead petitioner.

all the evidence before me, . . . [Settenda] has not provided what to this Court is credible, complete and truthful information concerning his activities with the ISO, his reasons for leaving Uganda and what exactly he fears would happen if he comes back." Accordingly, the IJ denied the relief sought but nevertheless granted petitioners voluntary departure under INA § 240B, 8 U.S.C. § 1229C.

On appeal to the BIA, a single member of the Board rejected petitioners' claims, specifically relying upon and affirming the IJ's findings that the "testimony was not sufficiently credible and the evidence presented was not adequate to support the [petitioners'] burden of proof." The BIA also stated that

> [o]verall, we agree with the Immigration Judge that the testimony, of limited credibility and lacking in detail, combined with the inadequate documentary support, provides insufficient evidence to meet the overall burden of proof. On this same basis, we agree that the record does not provide prima facie evidence that it would be more likely than not that the [petitioners] would face torture if returned to their native country. We, therefore, agree they are ineligible for relief under the Convention Against Torture.

In his petition to this court, Settenda makes three arguments: first, that his testimony was credible and establishes his eligibility for asylum and withholding of removal; second, that the IJ and BIA failed to analyze his CAT claim under the proper legal standard; and third, that the single-member BIA order

-4-

violated the applicable regulations and his rights under the Fifth Amendment's Due Process Clause. After describing the standards of review, we analyze these arguments seriatim.

## II.

"Ordinarily, Courts of Appeals review decisions of the [BIA], and not those of an IJ. When the BIA does not render its own opinion, however, and either defers [to] or adopts the opinion of the IJ, a Court of Appeals must then review the decision of the IJ." Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003) (quoting Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002)). We will uphold decisions of the IJ and BIA "if supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (internal quotation marks omitted). This standard applies both to asylum and withholding claims as well as to claims brought under CAT. See, e.g., Pieterson v. Ashcroft, 364 F.3d 38, 40 (1st Cir. 2004). We will reverse only if the petitioner's evidence would compel a reasonable factfinder to conclude that relief was warranted. Elias-Zacarias, 502 U.S. at 483-84 (codified at INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B) ("the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary")). Appellate courts review legal conclusions de novo, Manzoor v. U.S. Dept. of Justice, 254 F.3d 342, 346 (1st Cir. 2001), including alleged errors related to due

process claims, Mekhoukh v. Ashcroft, 358 F.3d 118, 129 (1st Cir. 2004).

## A. Asylum and Withholding of Removal

Settenda bore the burden of establishing his eligibility for asylum and withholding of removal. 8 C.F.R. § 1208.13(a). To be eligible for asylum, Settenda had to prove that he was a refugee under 8 U.S.C. § 1158(b)(1), meaning that he was "unable or unwilling to return to . . . [Uganda] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (defining "refugee"). A petitioner who is unable to establish eligibility for asylum a fortiori fails to establish eligibility for withholding of deportation. Khem v. Ashcroft, 342 F.3d 51, 54 (1st Cir. 2003); see also, Nelson v. INS, 232 F.3d 258, 261 n.2 (1st Cir. 2000) ("Because a failure to prove eligibility for asylum under INA § 208, 8 U.S.C. § 1158, necessarily means a failure to meet the requirements for withholding of deportation, we only discuss the former." ). An applicant must support his claim through credible testimony at all stages of the proceedings, and if the testimony is credible, it "may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a).

The IJ's well documented finding that Settenda failed to support his application for asylum and withholding with credible

testimony dooms his claim on appeal. "[T]he IJ must, if he or she chooses to reject [the petitioner's] testimony as lacking credibility, offer a specific, cogent reason for [the IJ's] disbelief." Gailius v. INS, 147 F.3d 34, 47 (1st Cir. 1998) (internal quotation marks and citation omitted). Here, the IJ detailed the reasons for her conclusions, drawing on her observations of Settenda while testifying as well as analyzing the inconsistencies in and improbability of portions of the testimony. Similarly, the BIA identified the portions of the IJ's findings--namely, the general lack of credibility of Settenda's testimony and the inadequate documentary support--which it relied on and affirmed. See Salazar v. Ashcroft 359 F.3d 45, 52 (1st Cir. 2004) (citing Chen v. INS, 87 F.3d 5, 7-8 (1st Cir. 1996), for the proposition that "if the Board's view is that the IJ 'got it right,' the law does not demand that the Board go through the idle motions of dressing the IJ's findings in its own prose" and that the BIA "may simply state that it affirms the IJ's decision for the reasons set forth in that decision"). The IJ made detailed findings about the deficiencies in Settenda's testimony and documentary evidence and why she found his testimony not to be credible; the BIA specifically affirmed and adopted those findings. Our review reveals that far from compelling a conclusion contrary to that reached by the IJ and BIA, see Elias-Zacarias, 502 U.S. at

483-84, the findings of the IJ are supported by substantial evidence. On this record, we find no error.

## B. Relief Under the Convention Against Torture

An applicant seeking protection under CAT must establish "that he or she is more likely than not to be tortured if removed" to the proposed country of removal. Saint Fort v. Ashcroft, 329 F.3d 191, 196 (1st Cir. 2003) (citing 8 C.F.R. § 208.16(c)(2)). "For an act to constitute torture it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." Elien v. Ashcroft, 364 F.3d 392, 398 (1st Cir. 2004) (quoting In re J-E-, 23 I. & N. Dec. 291, 297 (BIA 2002)). See also 8 C.F.R. § 208.18(a)(1).

Settenda claims that the IJ and BIA failed to apply the correct legal standard in denying his request for relief under CAT because the undisputed portions of his testimony, along with the U.S. State Department's 2001 Ugandan country conditions report, establish that he will be tortured if he returns to Uganda. Specifically, Settenda argues (1) that his testimony showed that he would be tried and convicted for desertion, and possibly treason, in a Ugandan military court, and (2) the State Department country conditions report, along with an Amnesty International report,

establish that prison conditions in Uganda meet the definition of torture under CAT. In reply, the government seems to urge that the IJ's credibility determinations alone foreclose Settenda's claim for relief under CAT and that the CAT claim should be denied because the asylum and withholding claims were properly denied.

While we have not addressed the precise contours of the different standards petitioners must meet to support a claim for asylum and withholding of removal as compared to relief under CAT, we have observed that a CAT claim, which requires that the petitioner show that it is more likely than not he would be tortured upon return to his country, establishes a higher burden of proof than an asylum claim, which requires that the petitioner show a well founded fear of persecution. El Moraghy v. Ashcroft, 331 F.3d 195, 205 (1st Cir. 2003).[3] This distinction has prompted one court to observe that CAT's "reach is both broader and narrower than that of a claim for asylum or withholding of deportation: coverage is broader because a petitioner need not show that he or she would be tortured 'on account of' a protected ground; it is narrower, however, because the petitioner must show that it is 'more likely than not' that he or she will be tortured, and not simply persecuted upon removal to a given country." Kamalthas v. INS, 251 F.3d 1279, 1283 (9th Cir. 2001).

---

[3]We have also observed that while aggravated felons are statutorily ineligible for asylum and withholding, they are eligible for relief under CAT. Saint Fort, 329 F.3d at 195.

Additionally, unlike some of our sister circuits, we have not addressed whether an adverse credibility finding that defeats a request for asylum <u>a fortiori</u> defeats a claim for relief under CAT. <u>See</u> <u>Mansour</u> v. <u>INS</u>, 230 F.3d 902, 906-09 (7th Cir. 2000) (holding that the BIA failed to properly consider petitioner's CAT claim when it denied the motion to reopen because of an adverse credibility finding regarding the petitioner's request for asylum). We think a <u>per se</u> rule that an adverse credibility determination on asylum automatically defeats an application under CAT would be erroneous. Each case will vary with the facts. While an adverse credibility determination on asylum would doom some CAT claims, it would not doom others.

Here, Settenda argues that the IJ's adverse credibility findings were not applicable to at least a portion of his testimony, citing the IJ's statement that "[i]n the testimony of both [Settenda] and his wife, threats have been made that he would be [brought] to justice if he returns to Uganda. He may, according to the way justice works in Uganda, have reasons to believe that he could be harmed through an extrajudicial trial or other treatment . . . . Most clearly, this respondent has indicated that he fears harm because he abandoned his duties." Settenda claims that this finding, coupled with country condition reports, substantiates his CAT claim even though his asylum and withholding claims were rejected. Even if these statements by the IJ could be read as

crediting Settenda's testimony that he will be subjected to a military trial and subsequently imprisoned -- a matter on which we take no view -- Settenda's CAT claim still founders as a matter of law.  In light of relevant precedent, it was not unreasonable for the BIA to conclude that the documentary evidence does not support the legal conclusion that the trial and prison conditions constitute torture.

Settenda cites the following portion of the State Department country conditions report for Uganda to substantiate his claim that he will be tortured if returned to his home country.

> The military court system does not assure the right to a fair trial.  Although the accused has the right to retain legal counsel, military defense attorneys often are untrained and may be assigned by the military command, which also appoints the prosecutor and the adjudicating officer.  The sentence passed by the military court, which can include the death penalty, may be appealed to the high command but not to the High or Supreme Courts.

Additionally, Settenda draws attention to the State Department's conclusion that "[p]rison conditions remain harsh and life threatening. . . .  Both civilian and military prisons have high mortality rates from overcrowding, malnutrition, diseases spread by unsanitary conditions, and HIV/AIDS."  The report goes on to say that the Uganda Human Rights Commission "reported severely inadequate medical services, seriously unhygienic conditions, and a situation of 'semi-starvation' among prisoners in many prisons." Similarly, Amnesty International's 2000 Uganda report found that

"[p]rison conditions were harsh, with severe overcrowding, and disease was rife."

The BIA rejected a similar claim by a Haitian citizen who asserted that he would be tortured if returned to Haiti because, as a repatriated convict, he would be subjected to indefinite detention and imprisonment in the Haitian prison system. See In re J-E-, 23 I. & N. Dec. 291 (BIA 2002) (relied upon by Elien v. Ashcroft, 364 F.3d 392 (1st Cir. 2004)). There, the State Department report on Haiti indicated that "prison facilities are overcrowded and inadequate. Haitian prisoners are deprived of adequate food, water, medical care, sanitation, and exercise. Many prisoners are malnourished." Id. at 293. Notwithstanding these gross inadequacies, the BIA concluded that the indefinite detention and severely substandard prison conditions did not constitute torture under CAT, even though they might very well be considered "cruel, inhuman, or degrading punishment or treatment." Id. at 301, 304.

Additionally, the petitioner in In re J-E- established that isolated acts of torture occurred in Haitian prisons, such as burning with cigarettes and use of electric shock. However, the BIA found that he "failed to establish that it was more likely than not that [he] will be subject to torture if he is removed to Haiti. For example, there is no evidence that deliberately inflicted acts of torture are pervasive and widespread; that the Haitian

-12-

authorities use torture as a matter of policy; or that meaningful international oversight or intervention is lacking." Id. at 303.

Settenda's case is on all fours with In re J-E- and Elien. It was not unreasonable for the BIA to conclude that as alarming as the prison conditions in Uganda may be, they do not constitute torture under CAT. Unchallenged INS regulations provide that "[i]n order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering." 8 C.F.R. § 208.18. There is no evidence of that here. In fact, as in In re J-E-, the State Department report indicates that "[t]he harsh conditions largely resulted from the Government's seriously inadequate funding of prison facilities." Also mirroring In re J-E-, the State Department found that "[t]he central prison system continued to work with [non-governmental organizations] and the donor community to improve prison buildings, water and sanitation systems, food, and uniforms." While "[p]rogress has been minimal," the report also found that "Government agencies have sponsored or participated in numerous conferences on the justice system and prison conditions, and worked closely with international and domestic human rights organizations on prison reform efforts. There were reports that mortality rates decreased following these activities." Finally, as in In re J-E-, the State Department noted that the International Committee of the Red Cross and several local

-13-

non-governmental organizations were permitted access to the prison system.

To the extent that the State Department's report on Uganda mentions isolated incidents of torture within the prison system, Settenda, like the petitioner in In re J-E-, brought forth no evidence that those incidents of torture are so prevalent in Ugandan prisons that, more likely than not, he would be tortured there. Accordingly, we leave undisturbed the denial of relief under CAT.

## C.  Violation of BIA Regulations and Due Process

Citing to 8 C.F.R. §§ 1003.1(d)(1), (d)(3), and (e), Settenda claims that the BIA's single-member decision in this case contravened its own regulations and violated his due process rights.  The relevant regulations were part of procedural reforms to improve case management and were issued to improve the efficiency of the BIA and to allow one-member resolutions of a greater variety of cases.  Id.  Specifically, 8 C.F.R. § 1003.1(e)(5) provides that

> [i]f the Board member to whom an appeal is assigned determines, upon consideration of the merits, that the decision is not appropriate for affirmance without opinion, the Board member shall issue a brief order affirming, modifying, or remanding the decision under review, unless the Board member designates the case for decision by a three-member panel under paragraph (e)(6) of this section under the standards of the case management plan.

-14-

Id.  Petitioners argue that § 1003.1(e)(5)'s provision for a brief order by a single member conflicts with 8 C.F.R. § 1003.1(a)(7), which provides that "[i]f the Board Member determines that the decision is not appropriate for affirmance without opinion, the case will be assigned to a three-member panel for review and decision."  Settenda argues that § 1003.1(a)(7) compels the Board to either issue a single member affirmance without opinion, or to send the case to a three-member panel.  This argument is unavailing.

While these two provisions might seem to conflict on their face, the comments regarding the new provision, under the heading "Expanded Single Member Review," explain that

> [o]ne of the primary components of the case management system is expanded single-member review.  The current streamlining process permits a single Board member to affirm the decision of the immigration judge without opinion.  8 CFR 3.1(a)(7) [now moved to 8 C.F.R. § 1003.1(a)(7)].  The final rule retains this current practice intact, but expands upon this authority to permit a single Board member to affirm, modify, or remand the immigration judge's decision with a short explanation.

67 Fed. Reg. 54878, *54885 (citation omitted).  The government's brief suggests that these comments indicate that § 1003.1(a)(7) was not deleted from the regulations due to a clerical error.  This argument is supported by the comprehensive § 1003.1(e) "case management system" that contains provisions for initial case screening (§ 1003.1(e)(1)); dispositions of motions and procedural

or ministerial issues (§ 1003.1(e)(2)); triage of cases receiving a merits review (§ 1003.1(e)(3)); affirmance without opinion by a single Board member (§ 1003.1(e)(4)); brief orders by a single Board member (§ 1003.1(e)(5)); and three-member panel decisions (§ 1003.1(e)(6)). It is particularly notable that § 1003.1(e)(4) provides that a single member of the Board may issue an affirmance without opinion, as does § 1003.1(a)(7), which is cited by Settenda.

> The Board member to whom a case is assigned shall affirm the decision of the Service or the immigration judge, without opinion, if the Board member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation; or (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.

Id. § 1003.1(e)(4). The duplication of provisions providing for a single member affirmance without opinion supports the government's contention that a clerical error led to the continued inclusion of the now duplicative § 1003.1(a)(7). In any event, the comments to the final rule make clear that the agency intended to expand the purview of single members to go beyond issuing an affirmance without opinion and include the ability to issue a brief order disposing of the case.

-16-

Finally, even if 1003(e)(5), which was adopted in 2002, conflicts with § 1003(a)(7), which was adopted earlier, we note that the more recent, specific enactment supercedes the older, more general one.  Cf. Natural Resources Defense Council, Inc. v. EPA, 824 F.2d 1258, 1278 (1st Cir. 1987)("Using familiar statutory interpretation, when there is such a conflict, the most recent and more specific congressional pronouncement will prevail over a prior, more generalized statute.").  See also Batalova v. Ashcroft, 355 F.3d 1246, 1252 (10th Cir. 2004)(upholding 8 C.F.R. § 3.1(e)(5) which was recodified and renumbered as § 1003(e)(5)).  In light of the explicit language allowing a single Board member to "issue a brief order affirming, modifying, or remanding the decision under review," § 1003.1(e)(5), which is part of a recently enacted comprehensive case management scheme, we find that the BIA's use of this procedure did not contravene its own regulations.

Finally, we briefly address Settenda's due process claim.  We have already ruled that the BIA's streamlined procedures do not violate petitioners' due process rights.  See, e.g., Albathani, 318 F.3d at 375-78 (holding that the BIA's "affirmance without opinion" procedure does not violate due process).  If due process requirements are met when the BIA affirms the IJ's finding without issuing any opinion, the due process requirements are certainly met when the BIA affirms the IJ's finding with a brief explanatory order.  Similarly, we reject Settenda's claim that the BIA violated

-17-

his due process rights by allegedly failing to provide a clear administrative finding  or adequately review and establish the record of the case.  Again, while the BIA "is obliged to weigh all the pertinent factors . . ., to exhibit due consideration for the universe of weighted factors when tallying the equities, to exercise independent judgment, and to state plainly its reasons for granting or denying relief," Chen v. INS, 87 F.3d 5, 7 (1st Cir. 1996), it is well established that the "BIA can adopt, without further explication, the IJ's opinion." Albathani, 318 F.3d at 377. See also Chen, 87 F.3d at 8 ("[W]e join eight of our sister circuits in ruling that the Board need not write at length merely to repeat the IJ's findings of fact and his reasons for denying the requested relief, but, rather, having given individualized consideration to a particular case, may simply state that it affirms the IJ's decision for the reasons set forth in that decision.") (listing cases).  Here, the BIA opinion indicates that it gave individualized attention to Settenda's case, reviewed the record, and exercised independent judgment.  Furthermore, it stated plainly its reasons for affirming the IJ's decision.  Therefore, on this record, we find no deprivation of Settenda's due process rights.

**Affirmed.**