# United States Court of Appeals
## For the First Circuit

No. 04-1738

AZIZA A. ALI,

Petitioner,

v.

ALBERTO GONZÁLES,[*] ATTORNEY GENERAL,
UNITED STATES OF AMERICA,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,
Torruella and Howard, Circuit Judges.

Derege B. Demissie, with whom Demissie & Associates was on
brief, for petitioner.
Susan K. Houser, Attorney, Office of Immigration Litigation,
United States Department of Justice, with whom Peter D. Keisler,
Assistant Attorney General, and Richard M. Evans, Assistant
Director, were on brief, for respondent.

March 17, 2005

---

[*] Alberto Gonzáles was sworn in as United States Attorney General
on February 3, 2005. We have therefore substituted Attorney
General Gonzáles for John Ashcroft as the respondent. See Fed. R.
Civ. P. 25()(1); Fed. R. App. P. 43(c)(2).

**TORRUELLA**, **Circuit Judge**. Petitioner Aziza Ali appeals the Board of Immigration Appeals's ("BIA") affirmance of an Immigration Judge's denial of her applications for asylum, withholding of removal, and relief under the Convention Against Torture. We affirm.

## I. Background

Ali, a native and citizen of Ethiopia, entered the United States at Washington, D.C., on June 23, 1999, as a nonimmigrant authorized to remain in the United States until December 22, 1999. She overstayed her visa, and on November 29, 2000, the Immigration and Naturalization Service ("INS")[1] issued a Notice to Appear charging Ali with removability under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227 (a)(1)(B), for remaining in the United States for a time longer than permitted.

In written pleadings dated March 13, 2002, Ali admitted the factual allegations against her, conceded removability, and requested asylum, withholding of removal, relief under the Convention Against Torture ("CAT"), and voluntary departure. Ali testified at a hearing before an Immigration Judge on August 30, 2002 that she was the head of the home economics department at

---

[1] In March 2003, the relevant functions of the INS were transferred into the new Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement ("BICE"). For simplicity, we refer to the agency throughout this opinion as the INS.

Kotebe College of Teacher Education, located in Addis Ababa, from 1973 until she came to the United States in 1999. She stated that, in 1974, the king of Ethiopia was overthrown and that, under the new communist regime, "[a]ll people, those people who are holding office, were expected to, to align with the revolutionary government." The new regime assigned Ali to work as a chairperson with a women's association in her kebele, a village or municipal unit. She served as the chairperson from 1978 until 1984, when she came to the United States to study. Ali returned to Ethiopia in 1986 and once again became involved with the women's association. Ali was also involved with a community watch group whose goals were to decrease domestic violence, alcoholism, and the number of runaway children.

In September 1988, Ali remarried and moved to another kebele, where she was recruited and became a member of the Ethiopian Labor Union Party.[2] She testified that, in 1991, a new regime took over. This regime considered all members of the Ethiopian Labor Union Party to be supporters of the previous government. As a result, Ali was required to sign in with the local authorities each week and could not leave her town on weekends.

---

[2] The Ethiopian Labor Union Party (also called the Worker's Party) was the party of the communist regime in control of the country at the time. While Ali had worked for the women's association in her prior kebele, she did not officially join the Ethiopian Labor union Party until she remarried and moved.

Ali testified that, in June of 1993, three men, two of them armed, came to her home in the middle of night. One of the men, named Bereket Gebre Egziabeher ("Egziabeher"), was the head representative of Ali's kebele. Ali testified that the men took Ali to the kebele office, telling her they wanted to know what she did for the former regime. Once at the office, Egziabeher took Ali into a separate room. Ali testified that he put a pistol on a table and began asking questions about Ali's involvement with the former regime. During questioning, Egziabeher hit and pushed Ali. Ali testified that he then raped her, hit her on the face, and warned her that he would kill her if she ever said anything. The two other men then drove Ali home. She did not tell her husband about the rape because of Egziabeher's warning. Ali testified that, as a result of the assault, she missed a week of work. On cross examination, Ali admitted that she did not mention the rape in her asylum interview because she did not want to talk about it.

Ali testified that she eventually returned to work and remained in her position as head of the home economics department until she left Ethiopia in 1999. She lived at the same location and remained in the same kebele from the time of the rape until the time she left Ethiopia. In 1997, Ali traveled to India and the Phillippines for three weeks as part of her job. Ali did not ask for asylum or refugee status in either India or the Phillippines, and returned home at the end of her trip. Ali was able to obtain

-4-

exit visas for her trips to India, the Phillippines, and the United States without problems.

Ali testified that between 1993 and 1999, the government arrested many other people who had been members of the Ethiopian Labor Union Party; Ali herself was not harmed or arrested again. In March 1999, Seleshe Peshome ("Peshome"), the chairperson at Ali's former kebele, was arrested by the government. Ali had not seen Peshome for eleven years, but she testified that hearing of his arrest contributed to her desire to remain in the United States.

In an oral decision after the hearing on August 30, 2002, the Immigration Judge denied Ali's applications for asylum, withholding of removal, and relief under the CAT, and granted her request for voluntary departure on or before October 29, 2002. On September 16, 2002, Ali filed a motion to reconsider. On September 27, 2002, Ali appealed the Immigration Judge's August 30, 2002 decision to the BIA. On October 11, 2002, the Immigration Judge denied Ali's motion to reconsider. Ali appealed the Immigration Judge's denial of her motion to reconsider to the BIA on November 15, 2002. On May 7, 2004, the BIA affirmed the August 30, 2002 decision of the Immigration Judge, and found that the Immigration Judge lacked jurisdiction to consider Ali's motion to reconsider, because jurisdiction of Ali's case vested with the

BIA when she appealed the Immigration Judge's August 30, 2002 decision.  This appeal followed.[3]

## II.  **Analysis**

### A.  **Burden of Proof and Standard of Review**

In order to be eligible for asylum, Ali has the burden of establishing that she is a refugee.  8 U.S.C. § 1158(b)(1); 8 C.F.R. § 208.13(a).  The term "refugee" means any person who is outside of their home country and "is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A).  Ali may therefore meet her burden by demonstrating past persecution or a well-founded fear of future persecution on account of one of the five statutory grounds.  8 C.F.R § 208.13(b).

To establish past persecution, an applicant must provide "conclusive evidence" that she was targeted on any of the five grounds.  Fesseha v. Ashcroft, 333 F.3d 13, 18 (1st Cir. 2003).  To show a well-founded fear of future persecution, "the asylum

---

[3]  Ali's brief only addressed the BIA's denial of her application for asylum.  She makes no argument regarding withholding of removal, relief under the CAT, or the BIA' determination that the Immigration Judge lacked jurisdiction to consider her motion to reconsider.  Ali has therefore waived any challenge to these issues.  See Qin v. Ashcroft, 360 F.3d 302, 305 n.5 (1st Cir. 2004).

applicant's fear must be both genuine and objectively reasonable." Aguilar-Solís v. INS, 168 F.3d 565, 572 (1st Cir. 1999). An applicant who has proven past persecution is "presumed to have a well-founded fear of future persecution unless the agency can prove otherwise." Fesseha, 333 F.3d at 18. "An applicant must support his claim through credible testimony at all stages of the proceedings, and if the testimony is credible, it may be sufficient to sustain the burden of proof without corroboration." Settenda v. Ashcroft, 377 F.3d 89, 93 (1st Cir. 2004)(internal quotation marks and citations omitted).

We review decisions of the BIA under the substantial evidence standard. Mihaylov v. Ashcroft, 379 F.3d 15, 17 (1st Cir. 2004). Under this standard, the BIA's decision will be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elías-Zacarías, 502 U.S. 478, 481 (1992)(quoting 8 U.S.C. § 1105a(a)(4)). Under this standard, "[t]o reverse the BIA finding, we must find that the evidence not only supports that conclusion, but compels it . . . ." Id. at 481 n.1 (emphasis in original).

## B.  Past Persecution

Ali first argues that she has proven past persecution on account of her political opinion, due to her membership in the Ethiopian Labor Union Party and her history of political and

community activity in Ethiopia. She bases this argument on her testimony regarding her arrest, beating and rape by Egziabeher.

The Immigration Judge, while making clear that he could not be sure that Ali was lying, nevertheless found Ali's story lacking in credibility. He based this finding on several factors, among them that Ali did not mention the rape until her hearing on August 30, 2002. The Immigration Judge stated that, while he understood that Ali may have been ashamed and fearful of discussing the rape, he found it hard to believe "that such a highly motivated, well-educated, and leader in the community would come to the United States and appear for her political asylum interview and not mention to the interviewer that she had been brutally raped by a representative of the Ethiopian government." Noting that the asylum officer who interviewed Ali was a woman, the Immigration Judge stated that "the respondent had every opportunity to testify with respect to the occurrence of a brutal rape to another woman, especially in light of the respondent's past history and record of women's right[s] activism." The Immigration Judge also based his decision on the fact that, before and after the rape, Ali worked for the Ethiopian government as head of the home economics department at Kotebe College, that she received exit visas and that she was allowed to travel out of the country on several occasions. The BIA also found it relevant that, after the alleged rape, Ali was not harmed again by anyone, including the man who raped her.

The BIA affirmed the Immigration Judge because of Ali's failure to mention the rape to the asylum officer who interviewed her.

"[W]hen a hearing officer who saw and heard a witness makes an adverse credibility determination and supports it with specific findings, an appellate court ordinarily should accord it significant respect." Aguilar-Solís, 168 F.3d at 571. In this case, the Immigration Judge and BIA found that Ali failed to meet her burden of proof because of credibility problems and supported this determination with specific findings that "amply justified the . . . conclusion that the petitioner's testimony lacked credibility." Id. We therefore affirm the decision of the BIA regarding past persecution.

## C. Well-Founded Fear of Future Persecution

Because Ali has not proven past persecution, she is not entitled to a presumption of a well-founded fear of future persecution. Therefore, to demonstrate a well-founded fear, Ali must "establish not only that [she] harbors a subjectively genuine fear of future persecution but also that an objectively reasonable basis for that fear exists." DaSilva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005). We focus our discussion on the objective prong.

Ali bases her argument that she has a well-founded fear on several grounds: (1) her arrest and rape, and the threats to kill her and her family if she told anyone; (2) the evidence she presented regarding the treatment of people suspected of having

ties with the former communist regime; and (3) the arrest of her former colleague, Peshome.

After reviewing the record, we find that there is substantial evidence to support the determination that Ali did not have a well-founded fear of future persecution. Ali lived in the same home for six years after the rape without incident. She maintained her job with the government, and was allowed to obtain exit visas and leave the country to go to India, the Phillippines, and the United States. She did not request asylum in India or the Phillippines. Her family safely remains in Ethiopia, and one of her sons works for the government-owned airline. Her former colleague who was arrested was a man she had not seen for eleven years, and it appears that Ali merely assumed that the arrest was because of his political activities. Given these facts, we are not compelled to conclude that an objectively reasonable basis for Ali's fear exists. We therefore affirm the decision regarding well-founded fear of future persecution.

### III. Conclusion

For the reasons stated above, the BIA's order is affirmed.

**Affirmed**.