**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 05-2295

ROMILTON C. MARTINS,

Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella and Lynch, Circuit Judges,
and Young[*], District Judge.

José A. Espinosa on brief for petitioner.

Michael Sady, Assistant United States Attorney, and Michael J. Sullivan, United States Attorney, on brief for respondent.

June 23, 2006

[*] Of the District of Massachusetts, sitting by designation.

**YOUNG, District Judge**.  We must determine whether substantial evidence supports the summary affirmance by the Board of Immigration Appeals ("BIA") of a denial by an Immigration Judge ("hearing officer") of the application for political asylum filed by petitioner, Romilton C. Martins ("Martins").  After careful review of the record, we conclude that the hearing officer's determination was sufficiently supported and deny Martins's petition for review.

## I.   Factual and Procedural Background

Martins is a citizen and native of Brazil.  He entered the United States on September 22, 2002 in Tecate, California.  The following day, September 23, the Immigration and Naturalization Service ("INS") served Martins with a Notice to Appear charging that he was subject to removal as an alien who was neither admitted nor paroled after inspection by the INS.  On February 12, 2003, Martins acknowledged the Notice to Appear, admitted the truth of the factual allegations it contained, and conceded his removability.  Martins subsequently filed an application for asylum, withholding of removal, and relief under the Convention Against Torture (the "Convention").

A hearing was held in Boston before Immigration Judge Leonard Shapiro on February 10, 2004.  At that hearing, Martins testified that he had owned a clothing factory and several stores

in Brazil. He stated that these businesses were doing well until he began having problems with union representatives. Martins explained that the union was against him because of his membership and support for the Partido Movemento Democratico Brasileiro (PMDB), the Brazilian Social Democratic political party. Martins testified that the union was opposed to the activities of the PMDB and supported the party that had just won power in Brazil.

Martins testified that the union would lure his workers away with false promises of higher pay, and as a result, he would have to cancel orders that he could not fill. He claimed that he received threats from the union in the form of calls and letters with no return address, and although he notified the police, "nothing would happen" because there was no way to prove anything and because the police "[didn't] really try to help anyone with anything."

Martins also testified that in July or August 2002, union members went to his home, knocked on his front door, and discharged their firearms. Martins stated that he was not home at the time. He informed the police of this incident, but said they refused to assign an officer to him or to offer him any protection. On cross-examination, however, Martins testified that there were actually two shooting incidents in his home -- one in July and one in August 2002. He described the July 2002 incident as a minor one which he did not report to the police. Martins confirmed that the August

-3-

2002 shooting was the same incident that was described in a document he submitted to the hearing officer as a police report of an August 21, 2002 shooting at his house. On cross-examination, Martins admitted that although he testified that he was not at home during the August incident, the document he submitted as a police report stated that he and his wife were home.

Martins also testified on cross-examination that, in fact, two incidents occurred on August 21, 2002 -- an armed robbery attempt and the shooting at his home. Martins submitted to the hearing officer documents and translations of those documents, which he represented to be police reports he filed in relation to the incidents. The hearing officer admitted those documents in evidence.

Martins admitted at the hearing to having been present in the United States illegally in the past, from 1989 to 1993.

The hearing officer issued an oral decision denying Martins's requests for asylum, withholding of removal, and relief under the Convention. The hearing officer determined, noting the numerous inconsistencies in Martins's testimony, that Martins was not a credible witness. The hearing officer concluded that "[t]he circumstances surrounding what any reasonable person would consider to be a very serious occurrence are so garbled and inconsistent that I cannot rely on the incident ever having occurred." The hearing officer also indicated that he believed the documents

-4-

submitted by Martins to be fraudulent, noting that "[i]n reviewing the document which purports to be a translation of a report stating a death attempt[,] the report is so irrational that it is unbelievable." The hearing officer questioned how a claim that union representatives trying to hire away Martins's workers properly could morph into a claim of political asylum from the activities of the Brazilian government. The hearing officer also found "no evidence that anyone from the government of Brazil is seeking to torture the respondent."

On July 26, 2005, the BIA affirmed the hearing officer's decision without issuing an opinion. Martins filed his petition for review by this Court on August 25, 2005. On September 9, 2005, Martins's removal was stayed pending his appeal.

## II. Jurisdiction and Standard of Review

We have jurisdiction over Martins's timely petition for review pursuant to 8 U.S.C. §§ 1252(a)(5) and 1252(b)(1). Where the BIA has summarily affirmed the hearing officer's decision, we turn to that decision to review. See Chen v. Gonzales, 418 F.3d 110, 113 (1st Cir. 2005). We must uphold determinations of the hearing officer if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (internal quotation marks omitted). This "substantial evidence" standard applies to claims

for asylum, withholding of removal, and relief under the Convention. <u>Settenda</u> v. <u>Ashcroft</u>, 377 F.3d 89, 93 (1st Cir. 2004). The hearing officer's denial must stand unless "the petitioner's evidence would compel a reasonable factfinder to conclude that relief was warranted." <u>Id.</u> Absent an error of law, we can overrule the hearing officer only "if the evidence points unerringly in the opposite direction." <u>Nikijuluw</u> v. <u>Gonzales</u>, 427 F.3d 115, 120 (1st Cir. 2005) (citation and internal quotation marks omitted).

We also review adverse credibility findings under the substantial evidence standard. <u>Chen</u>, 418 F.3d at 113. "[I]f we cannot say a finding that the alien is credible is compelled - then the decision must be affirmed." <u>Id.</u> "Matters of witness credibility and demeanor are peculiarly for the factfinder," <u>Rodriguez Del Carmen</u> v. <u>Gonzales</u>, 441 F.3d 41, 43 (1st Cir. 2006), and credibility determinations supported with specific factual findings are treated with "great respect," <u>Laurent</u> v. <u>Ashcroft</u>, 359 F.3d 59, 64 (1st Cir. 2004).

## III. Discussion

Martins does not challenge the denial of his application for withholding of removal in his brief. Therefore, any claim for withholding is considered waived. <u>See</u> <u>Harutyunyan</u> v. <u>Gonzales</u>, 421 F.3d 64, 65 n.1 (1st Cir. 2005).

In order to establish an entitlement to asylum, Martins must show that he is a refugee within the meaning of the immigration laws. A refugee is an alien "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [his home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). A petitioner must show "that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). The burden of proof is on the alien to establish that he is a refugee. Id. § 1158(b)(1)(B)(i).

Martins argues that the hearing officer improperly relied on "minor" discrepancies in Martins's testimony to determine that Martins was not a credible witness -- specifically, discrepancies concerning the dates of the two shooting incidents and whether he had reported both incidents to the police. The hearing officer, however, based his credibility determination on Martins's differing testimony on direct and cross-examination as to the number of shooting incidents at his home, not the dates of those incidents. Further, the hearing officer noted contradictions between Martins's testimony that he was not home during the August shooting at his home and the report he submitted, which described Martins as being

-7-

inside the residence at the time of the shooting and seeing the perpetrators attempt to enter his home. The hearing officer also found that Martins asserted that he reported both incidents to the police, but later testified that he never reported the July 2002 incident. While the latter arguably could be labeled as a "minor" discrepancy, the former are discrepancies that relate to significant details of the incidents of alleged persecution that form the basis of Martins's petition. Unquestionably, such discrepancies are reasonably considered in assessing the veracity of the petitioner's testimony. Those two discrepancies alone adequately support the hearing officer's credibility determination. Although we need not address whether reliance on any additional "minor" inconsistencies was proper, we do note that any inaccuracy or falsehood in a witness's testimony may be considered by the hearing officer, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii).

The hearing officer's decision to give no weight to the documents submitted by Martins is also adequately supported by the record. As the hearing officer observed, both reports are inconsistent with Martins's testimony regarding the August incident that he was not at home during the shooting. Further, the document labeled "Incident Report from the Military Police of Minas Girais, Brazil" lists Martins and three other males as victims on the first

page and then, on the second page, seemingly describes the shooting incident at Martins's home referring only to the victim and his wife.[1] As to the second "police report," which also describes the August shooting, the hearing officer found, based on a review of the document, that the report was "so irrational that it is unbelievable." Indeed, this document contains statements that strongly suggest it is not even a police report. The document refers to "[o]ur reporters" being "at the scene and verif[ying] through the common citizens that there was an attempt of 'a gun crime.'" It indicates that details of the incident were garnered from the "Police Occurrence Bulletin No. 31.031".[2] In short, this document reads like a news article and not the police report Martins represented it to be. The hearing officer properly concluded that both these documents were not credible.

We conclude, based on the record, that the hearing officer's credibility determination was substantially supported by the record and as a result, Martins failed to establish eligibility for asylum. We further note that Martins failed to show any connection between his alleged persecution and the Brazilian

---

[1] It is not clear from the testimony and these documents whether the shooting at Martins's residence and the attempted robbery were the same incident or whether the attempted robbery was a separate incident involving Martins and the other men listed in the report.

[2] The other document submitted by Martins is titled Bulletin No. 31.013.

government.  Nikijuluw, 427 F.3d at 121 ("[A]n applicant qualifies for asylum only when he suffers persecution that is the direct result of government action, government-supported action, or [the] government's unwillingness or inability to control private conduct.").

Given the lack of any credible evidence in support of this petition, we conclude that the hearing officer's determination that there was no evidence to justify relief under the Convention was also reasonable and substantially supported by the record. Again, even accepting all of Martins's evidence as credible, Martins would still fail to show a likelihood that, if removed to Brazil, he would be tortured[3] "with the consent or acquiescence of a public official who has custody or physical control [over him]." Settenda, 377 F.3d at 94 (citations and internal quotation marks omitted).

**The petition for review is denied.**

---

[3]  To obtain relief under the Convention, Martins must show "that it is more likely than not that he . . . would be tortured if removed" to Brazil.  8 C.F.R. § 208.16(c)(2).  Torture is defined as "(1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions."  Settenda, 377 F.3d at 94 (citing 8 C.F.R. § 208.18(a)(1)).