**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 06-2257

JUAN LOPEZ; MARIA LOPEZ,

Petitioners,

v.

ALBERTO R. GONZALES, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

Carlos E. Estrada on brief for petitioners.
Greg D. Mack, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Peter D. Keisler, Assistant Attorney General, Civil Division, Terri J. Scadron, Assistant Director, and Kobi O. Smith, Contract Attorney, on brief for respondent.

July 13, 2007

**STAHL**, <u>**Senior Circuit Judge**</u>.    Juan and Maria Lopez petition for review of a decision of the Board of Immigration Appeals ("BIA") affirming a decision of an Immigration Judge ("IJ") denying them asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  We deny the petition.

We glean the following facts from the record of the hearing before the IJ.  Juan and Maria Lopez are married citizens of Colombia.  Juan Lopez ("Lopez") owned a trucking business in Don Matias, Colombia.  On May 28, 1998, he was stopped while making a delivery by members of the guerilla group known as the Revolutionary Armed Forces of Colombia ("FARC").  The FARC guerillas held him for a short period of time, during which they beat him and demanded that he inform them in the future about other trucks they could hijack and rob.

After being released, Lopez reported his robbery and kidnapping to the police, but they reportedly did not investigate the matter.  Lopez then approached a group known as Convivir, which, according to the record, was a quasi-private self-protection organization formed with the support of the Colombian government to help with such things as security of cargo transportation.  With the help of Convivir, the police then arrested five people suspected of being Lopez's assailants, two of whom Lopez ultimately identified.  However, the two posted bail and were released, and it does not appear that they were ever tried for the offense.

-2-

The Lopezes continued to be harassed by these two suspected assailants and others. They received threatening phone calls, and on one occasion, two people approached Maria Lopez at her workplace, looking for her husband. After that incident, the Lopezes moved to Monteria Cordoba, to stay with relatives. Shortly thereafter, the local leader of Convivir in Don Matias was assassinated. The Lopezes then moved to Medellin and sought visas to the United States. Juan Lopez traveled to the United States on or about August 23, 1999, on a nonimmigrant visa for pleasure travel, with authorization to stay in the United States until February 22, 2000. Maria Lopez traveled to the United States on or about February 24, 2000, as a nonimmigrant working on a B-1 visa, with authorization to remain until March 22, 2000.

On November 20, 2001, the Immigration and Naturalization Service ("INS")[1] issued them Notices to Appear. On the Lopezes' pre-hearing statement of May 29, 2003, they stated an intention to pursue asylum and withholding of removal claims. Their application for asylum was ultimately filed on April 28, 2005. On that same date, the Lopezes appeared before the IJ, who ruled that they did not qualify for asylum, withholding of removal, or protection under

---

[1]On March 1, 2003, the functions of the INS were transferred to the Department of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, § 471(a), 116 Stat. 2135, 2205 (codified at 6 U.S.C. § 291(a)).

the CAT.  They appealed to the BIA, which adopted and affirmed the decision of the IJ on August 10, 2006.

We will uphold decisions of the BIA "if supported by reasonable, substantial, and probative evidence on the record considered as a whole."  INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (internal quotation marks and citation omitted).  The substantial evidence standard applies to asylum and withholding claims as well as to claims brought under the CAT.  See Settenda v. Ashcroft, 377 F.3d 89, 93 (1st Cir. 2004).  "To reverse the BIA, we must be persuaded that 'the evidence not only supports that conclusion, but compels it.'"  Khem v. Ashcroft, 342 F.3d 51, 53 (1st Cir. 2003) (quoting Elias-Zacarias, 502 U.S. at 481 n.1).  Because the BIA adopted and affirmed the decision of the IJ, we review the IJ's decision as part of the final decision of the BIA.  Hernandez-Barrera v. Ashcroft, 373 F.3d 9, 20 (1st Cir. 2004).

An application for asylum must be filed within one year of the alien's arrival in the United States, absent changed circumstances affecting eligibility for asylum or extraordinary circumstances relating to the delay in filing.  8 U.S.C. § 1158(a)(2)(B), (D).  Both the IJ and the BIA found that more than a year had passed between the petitioners' respective entries in 1999 and 2000, and the filing of their application for asylum in 2005.  The petitioners did not allege any changed circumstances or otherwise explain their delay in filing, and indeed conceded the

-4-

issue before the IJ, and we therefore have no jurisdiction to review the determination that the one-year time limit had expired. Id. § 1158(a)(3); see Sharari v. Gonzales, 407 F.3d 467, 473 (1st Cir. 2005).

To qualify for withholding of removal, the petitioners must show that their "life or freedom would be threatened in [the removal country] because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "As a general rule, withholding is mandatory if an alien 'establish[es] that it is more likely than not that [he] would be subject to persecution on one of the specified grounds.'" INS v. Aquirre-Aquirre, 526 U.S. 415, 419 (1999) (quoting INS v. Stevic, 467 U.S. 407, 429-30 (1984)); accord Albathani v. INS, 318 F.3d 365, 372-73 (1st Cir. 2003) (applying "more likely than not" standard). This is a tougher standard than that for asylum, which requires only a "well-founded fear of persecution." 8 U.S.C. § 1101(a)(42)(A); see Aguilar-Solis v. INS, 168 F.3d 565, 569 n.3 (1st Cir. 1999) (contrasting "well-founded fear of persecution" with "clear probability of persecution").

The IJ and the BIA found that the petitioners' incidents with the FARC did not establish that they would more likely than not be persecuted on account of one of the five protected grounds. Petitioners argue that Lopez was targeted because of his membership in Convivir. However, the IJ found that the incidents Lopez

-5-

testified to were examples of criminal conduct, not persecution based on one of the five protected categories. The BIA held further that the incidents themselves "were not so menacing and immediate as to rise to the level of persecution." Our review of the record supports the IJ's determination. Lopez testified that, in each of the incidents in which he was harassed, the FARC members were demanding that he give them information to aid in hijackings and robberies, as they had when he first encountered them, and not that he was being targeted because of his affiliation with Convivir.[2] Therefore, we cannot say that the evidence compels a conclusion contrary to the IJ's.

To qualify for protection under the CAT, the petitioners must show that it is "more likely than not that [they] would be tortured if removed" to Colombia. 8 C.F.R. § 1208.16(c)(2); see Settenda v. Ashcroft, 377 F.3d 89, 94 (1st Cir. 2004). "To establish a prima facie showing of torture, a petitioner must offer specific showings that he or she will be subject to 'severe pain or suffering, whether physical or mental' by or at 'the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" Guzman v. INS, 327 F.3d 11, 17 (1st Cir. 2003) (quoting 8 C.F.R. 208.18(a)(1)).

---

[2]We do not reach the question of whether membership in Convivir qualifies as "membership in a particular social group" under the statute.

-6-

The IJ found that there was no evidence that the petitioners would be subject to future torture, and the BIA held in addition that there was no evidence of government "acquiescence" in the acts of the FARC such as would bring their actions under the definition of torture cited above. While it may be that Lopez will be subject to criminal pressures if removed to Colombia, the petitioners did not present any evidence that they would be faced with torture, particularly such as would be done "by or at the instigation of or with the consent or acquiescence of a public official." 8 C.F.R. 208.18(a)(1). Therefore, we cannot say that the evidence compels an alternative result.

The petition for review is **denied.**