# United States Court of Appeals
## For the First Circuit

No. 04-1103

MARICELLA MUMBI NJENGA; SAMUEL GITIMU RUHIU,

Petitioners,

v.

JOHN ASHCROFT, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Circuit Judge</u>,
Stahl, <u>Senior Circuit Judge</u>,
and Lipez, <u>Circuit Judge</u>.

<u>Okon J. Usoro</u> and <u>Okon J. Usoro, P.C.</u>, on brief, for petitioners.

<u>Song E. Park</u>, Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom <u>Michelle E. Gorden</u>, Attorney, and <u>Peter D. Keisler</u>, Assistant Attorney General, were on brief, for respondent.

October 20, 2004

**STAHL, <u>Senior Circuit Judge</u>**.  Petitioners Maricella Mumbi Njenga ("Njenga") and Samuel Gitimu Ruhiu ("Ruhiu") seek review of the decision of the Board of Immigration Appeals ("BIA") to deny their application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT").[1]  We affirm the BIA's decision.

## I.  Background

Njenga is a native and citizen of Kenya.  She entered the United States on September 6, 1996 as a non-immigrant visitor.

In April 2001, the Immigration and Naturalization Service ("INS") issued a notice of removal that charged Njenga with unlawfully remaining in the United States and being subject to removal under 8 U.S.C. § 1227(a)(1)(B).[2]  At her removal hearing before an immigration judge ("IJ"), Njenga conceded that she was removable, but she applied for relief in the form of asylum, withholding of removal, or relief under CAT.

Ruhiu, also a native and citizen of Kenya, entered the United States on March 15, 1998 as a non-immigrant student.  In

---

[1]The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, was implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681-761 (codified at 8 U.S.C. § 1231).

[2]The Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (codified as amended at 6 U.S.C. § 291(a)), abolished the INS and transferred its duties to the Department of Homeland Security.

2001, Ruhiu, like Njenga: (1) was accused of unlawfully remaining in the United States; (2) was charged with being subject to removal under § 1227(a)(1)(B); and (3) at his removal proceeding, conceded that he was removable. Ruhiu, however, did not apply for asylum, withholding of removal, or relief under CAT. Instead, he alleged that he and Njenga were married and attempted to derivatively benefit from Njenga's application.

During her removal hearing, Njenga stated that: (1) she and her family were either members of, or otherwise involved with, the Mungiki, a religious group that rejects Western culture in favor of traditional African values; (2) the Mungiki forcefully advocate female genital mutilation ("FGM"); (3) members of the Mungiki live throughout Kenya; (4) if she returns to Kenya, members of the Mungiki will subject her to FGM, and the Kenyan government will persecute her because of her connections to the Mungiki; and (5) she married Ruhiu before she left Kenya. Njenga submitted documents to support her testimony, including two unsigned affidavits from one of her brothers discussing the Mungiki, and an array of articles from a variety of sources about the Mungiki.

In response to a request from the IJ, the United States Department of State ("DOS") submitted an advisory letter pertaining to the Mungiki. The letter averred that: (1) the DOS "has seen no reports of anyone being threatened with harm for leaving the Mungiki"; (2) the DOS "is unaware of any incident of anyone being

-3-

harmed because of his or her relative's affiliation with the Mungiki"; (3) the Mungiki "are not present throughout [Kenya]"; (4) "government action against the Mungiki generally is against members who were engaged in some form of public, and at times disorderly, action"; and (5) the DOS "is unaware of any case in which the Mungiki have forced a woman to undergo FGM."

On April 26, 2002, the IJ denied Njenga's application for relief and ordered that she and Ruhiu either voluntarily leave the United States or be removed to Kenya. The IJ found that Njenga was barred from applying for asylum because her application was untimely and she was ineligible for the exception to the requirement that such applications be timely filed.[3] In addition, the IJ concluded that Njenga failed to establish her eligibility for withholding of removal or relief under CAT. The IJ based her conclusion on her determination that Njenga was not a credible witness. In making that determination, the IJ stressed that Njenga's testimony, particularly her testimony about the Mungiki, lacked sufficient detail,[4] was inconsistent,[5] and was not supported

---

[3]In the alternative, the IJ found that Njenga failed to establish that she was otherwise eligible for asylum.

[4]For example, the IJ noted that Njenga was unable to provide details of the beliefs and practices of the Mungiki, other than those contained in the articles she submitted, despite her testimony that she and her family were members of, or otherwise involved with, the group.

[5]For instance, Njenga initially claimed that she was too young in 1992 to participate in Mungiki activities, but she later stated

-4-

by the submitted documentary evidence. Finally, the IJ declared that even if Njenga had established her eligibility for relief, Ruhiu would not have been entitled to benefit from that eligibility because he and Njenga were not married.

Njenga and Ruhiu appealed the IJ's decision to the BIA. On December 17, 2003, the BIA adopted and affirmed the IJ's ruling. Njenga and Ruhiu then filed a timely appeal to this court.

In their petition to this court, Njenga and Ruhiu argue that: (1) their removal proceedings were void because the charging documents issued to them, that is, the notices to appear, were either not signed or not signed by an appropriate individual; (2) the IJ and BIA erred when they found that Njenga was ineligible to apply for asylum; (3) the IJ and BIA erred when they concluded that Njenga failed to establish her eligibility for withholding of removal or relief under CAT; and (4) the IJ and BIA erred when they determined that Njenga and Ruhiu were not married.

## II. Discussion

Generally, "Courts of Appeals review decisions of the [BIA], and not those of an IJ. When the BIA does not render its own opinion, however, and either defers [to] or adopts the opinion of the IJ, a Court of Appeals must then review the decision of the IJ." Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003)

---

that she began participating in Mungiki activities in 1992.

-5-

(alterations in original) (quoting <u>Gao</u> v. <u>Ashcroft</u>, 299 F.3d 266, 271 (3d Cir. 2002)).

Decisions of the IJ and BIA will be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." <u>INS</u> v. <u>Elias-Zacarias</u>, 502 U.S. 478, 481 (1992) (internal quotation and citation omitted); <u>see</u> <u>Settenda</u> v. <u>Ashcroft</u>, 377 F.3d 89, 93 (1st Cir. 2004). The abovementioned standard "applies both to asylum and withholding claims as well as to claims brought under CAT." <u>Settenda</u>, 377 F.3d at 93. The IJ and BIA's determinations will be reversed "only if the . . . evidence would compel a reasonable factfinder to conclude that relief was warranted." <u>Id.</u>

## A. Charging Documents

Njenga and Ruhiu first contend that the charging documents issued to them were either not signed or not signed by a proper individual and, consequently, their removal proceedings were void. This argument was never raised before the IJ or BIA.[6] Thus, Njenga and Ruhiu may not raise the argument before this court. <u>See</u> 8 U.S.C. § 1252(d)(1) (A court may review a final order of removal only if "the alien has exhausted all administrative remedies

---

[6]At Njenga's removal hearing, Njenga's counsel informed the IJ that the charging document issued to Njenga had not been signed. The IJ responded that she had a signed copy of the document and that the INS could provide Njenga with a new copy of the document. Njenga's counsel replied, "That's fine, Your Honor." There was no other discussion of the issue before the IJ or BIA.

available to the alien as of right."); <u>Opere</u> v. <u>INS</u>, 267 F.3d 10, 14 (1st Cir. 2001) (Because the arguments in question were "never raised before the [BIA, t]hey are . . . waived for failure to exhaust administrative remedies.").

## B. Asylum

Njenga and Ruhiu next claim that the IJ and BIA erred in determining that Njenga was ineligible for asylum because her application for asylum was untimely and she failed to demonstrate her eligibility for the exception to the requirement that such applications be timely filed. An individual applying for asylum must "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the [individual's] arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). There is, however, an exception to the one-year filing requirement that applies if the applicant "demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application . . . ." 8 U.S.C. § 1158(a)(2)(D). Significantly, "[n]o court shall have jurisdiction to review any determination of the Attorney General" concerning whether an applicant for asylum filed an untimely application or qualifies for the exception to the filing requirement. 8 U.S.C. § 1158(a)(3).

The IJ found that Njenga filed her application for asylum more than one year after her arrival in the United States and did not qualify for the exception to the filing requirement. The BIA adopted and affirmed the IJ's findings. We agree with our sister circuits that the unambiguous language of § 1158(a)(3) bars review in this court of those findings.[7] See Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003); Tsevegmid v. Ashcroft, 336 F.3d 1231, 1234-35 (10th Cir. 2003); Fahim v. U.S. Attorney Gen., 278 F.3d 1216, 1217-18 (11th Cir. 2002); Hakeem v. INS, 273 F.3d 812, 815 (9th Cir. 2001); Ismailov v. Reno, 263 F.3d 851, 854-55 (8th Cir. 2001); see generally Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003) ("[Section] 1158(a)(3) could bar our review of the IJ's determination of the timeliness of [a petitioner's] asylum application . . . ."). Therefore, Njenga's appeal of the denial of her asylum request is unavailing.[8]

---

[7]As a result, we need not decide whether Njenga was otherwise eligible for asylum.

[8]Njenga also claims that the denial of her request for asylum should be reversed because the IJ was not impartial and failed to instruct Njenga, who was represented by counsel, on the nuances of immigration law with regard to proving "changed circumstances" under § 1158(a)(2)(D). Yet, a review of the record reveals no indication that the IJ was partial. Moreover, it is not a judge's responsibility to instruct a represented party on the nuances of the law. And, even if the IJ were required to so instruct Njenga, Njenga has not demonstrated that she was prejudiced by any lack of instruction; in fact, Njenga submitted a plethora of documents and testimony on the issue of "changed circumstances."

### C. Withholding of Removal

Njenga and Ruhiu also assert that the IJ and BIA erred in concluding that Njenga did not establish her eligibility for withholding of removal.  To establish eligibility, Njenga had to prove that, "upon deportation, [s]he [was] more likely than not to face persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Salazar v. Ashcroft, 359 F.3d 45, 52 (1st Cir. 2004) (emphasis in original) (citing INS v. Stevic, 467 U.S. 407, 424 (1984)).

Njenga and Ruhiu claim that Njenga carried her burden. But, the IJ and BIA's well-documented conclusion that Njenga failed to support her withholding application with credible testimony dooms their claim on appeal.  See Gailius v. INS, 147 F.3d 34, 47 (1st Cir. 1998) ("[T]he IJ must, if he or she chooses to reject [an applicant's] testimony as lacking credibility, offer a specific, cogent reason for [the IJ's] disbelief.") (third alteration in original) (internal quotation and citation omitted).  As support for her conclusion, the IJ pointed to:  (1) the inconsistencies in Njenga's testimony; (2) Njenga's failure to support her testimony, particularly her testimony about the Mungiki, with sufficient detail; (3) Njenga's submission of unsigned affidavits from her brother; and (4) the letter from the DOS, which contradicted the

-9-

vast majority of Njenga's statements regarding the Mungiki. The BIA adopted and affirmed the IJ's findings.[9]

The record evidence does not compel the conclusion that Njenga established her eligibility for withholding; rather, it provides substantial support for the IJ and BIA's conclusion to the contrary. The denial of Njenga's request for withholding is affirmed.

### D. CAT

As a final matter, Njenga and Ruhiu maintain that the IJ and BIA erred in determining that Njenga failed to establish her eligibility for relief under CAT. An applicant seeking relief pursuant to CAT must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2) (emphasis added); see also Saint Fort v. Ashcroft, 329 F.3d 191, 196 (1st Cir. 2003) (citing § 208.16(c)(2)). "For an act to constitute torture it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5)

_____

[9]Njenga contends that the BIA erred in addressing "the issue of credibility when there was no issue of credibility in the case." Yet, in her decision, the IJ clearly questioned Njenga's credibility, stating, for example, that she "does not believe [Njenga's] testimony . . . that her entire family were members of the Mungiki."

not arising from lawful sanctions." Elien v. Ashcroft, 364 F.3d 392, 398 (1st Cir. 2004) (emphasis added) (internal quotation and citations omitted); see 8 C.F.R. § 208.18(a)(1).

Far from compelling a conclusion contrary to that reached by the IJ and BIA, the record evidence supports the IJ and BIA's finding that Njenga failed to establish "it is more likely than not" she will be tortured "by or at the instigation of or with the consent or acquiescence of a public official" if she is removed to Kenya. The letter from the DOS indicates that it is unlikely that Njenga will be tortured if removed to Kenya. In addition, the letter suggests that it is even more unlikely that she will be tortured "by or at the instigation of or with the consent or acquiescence of a public official." The additional questions surrounding Njenga's credibility further add to the reasonableness of the IJ and BIA's finding. The denial of Njenga's request for relief under CAT is affirmed.[10]

**Affirmed.**

---

[10]Njenga's application for asylum, withholding of removal, or relief under CAT was rightly denied. Therefore, it is unnecessary for us to review the IJ and BIA's determination that Njenga and Ruhiu were not married. Ruhiu, as Njenga's alleged husband, sought to derivatively benefit from Njenga's application, and because Njenga was rightly denied relief, it is immaterial whether she and Ruhiu were married.