**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals

## For the First Circuit

No. 04-2184

DOROTHEA LANGITAN,
Petitioner,

v.

ALBERTO GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,
Respondent.[*]

ON PETITION FOR REVIEW OF AN ORDER AND DECISION
OF THE BOARD OF IMMIGRATION APPEALS

Before
Torruella, Circuit Judge,
Siler,[**] Senior Circuit Judge,
and Howard, Circuit Judge.

William A. Hahn and Hahn & Matkov for petitioner.
Michael J. Sullivan, United States Attorney and Shelbey D. Wright, Assistant United States Attorney, on brief for respondent.

October 14, 2005

---

[*]Alberto Gonzales was sworn in as United States Attorney General on February 3, 2005. We have therefore substituted Attorney General Gonzales for John Ashcroft as the respondent. See Fed. R. Civ. P. 25(d)(1); Fed. R. App. P. 43(c)(2).

[**]Of the Sixth Circuit, sitting by designation.

**Per Curiam**. Dorothea Langitan petitions for review of the decision of the Board of Immigration Appeals ("BIA") to deny her applications for asylum and withholding of removal. We dismiss the asylum claim for a lack of jurisdiction and deny the remainder of the petition.

Langitan is a native and citizen of Indonesia. She entered the United States on March 7, 2001 under a non-immigrant visitor's visa. On March 11, 2002, she filed applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). In April 2002, the Immigration and Naturalization Service ("INS") issued a notice of removal charging Langitan with unlawfully remaining in the United States beyond the terms of her visa and being subject to removal under 8 U.S.C. § 1227(a)(1)(B).[1] A removal hearing before an immigration judge ("IJ") was subsequently convened to consider Langitan's applications for relief.

Langitan was the only witness at the removal proceeding. She testified that she was subject to persecution by members of the Muslim majority in Indonesia because of her Roman Catholic faith. Langitan described four incidents to support her claim of

---

[1]In March 2003, the relevant functions of the INS were reorganized and transferred into the new Department of Homeland Security.

-2-

persecution.[2]  In November 2000, people who Langitan thought were Muslim threw rocks at the church in which she was worshiping. Nobody was hurt, the building was not damaged, and the authorities were not notified.  Around the same time, Langitan saw a flyer that stated that it would be a "bloody Christmas," but she conceded that she did not know the origin of the flyer.

The other two incidents occurred at the local Catholic hospital where Langitan worked as a nurse.  Langitan detailed two incidents in which Muslims with critically ill relatives threatened her with violence if the relatives died.  Langitan admitted that those making the threats did not mention her religion and that the remarks could have been motivated by anxiety about the relative's condition.  Langitan further conceded that she has never suffered anti-Catholic intimidation from any government official; that she freely participated in the Indonesian political process; that her Catholic church and hospital are currently operating without substantial interference from government authorities; and that her son still resides in Indonesia, attends Catholic school, and openly practices Catholicism.

The IJ rejected Langitan's applications for relief on two grounds:  (1) Langitan's asylum application was time-barred; and (2) Langitan had failed to demonstrate that she was likely to

---

[2]In addition to these specific incidents, Langitan stated that she had heard rumors about incidents of anti-Catholic violence in other parts of Indonesia.

suffer persecution on account of her religion if she returned to Indonesia. Langitan appealed to the BIA which generally affirmed and specifically endorsed the IJ's conclusion "that [Langitan] was ineligible for asylum because of a failure to file for such relief within the required time period." Langitan sought reconsideration, which the BIA denied, and then petitioned this court for review.

Langitan raises three issues. First, she contends that the BIA erred in determining that her asylum application was untimely. Second, she claims that there was inadequate evidence to support the IJ's ruling that she had not demonstrated a likelihood of persecution on her return to Indonesia. Finally, she argues that her removal proceeding was conducted in an unfair manner.

We lack jurisdiction to consider Langitan's claim concerning the timeliness of her asylum application. An individual applying for asylum must "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the [individual's] arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). We may not review the BIA's conclusion that an asylum application was filed outside the time period specified in 8 U.S.C. § 1158(a)(2)(B). See 8 U.S.C. § 1158(a)(3); see also Njenga v. Ashcroft, 386 F.3d 335, 339 (1st Cir. 2004).

While an asylum application is subject to a one-year filing deadline, no such deadline applies to an application for the withholding of removal. See Zheng v. Gonzales, 409 F.3d 804, 808

-4-

(7th Cir. 2005).  We therefore may consider the merits of this claim.[3]  To establish eligibility for withholding of removal, Langitan had to prove that "upon deportation she was _more likely than not_ to face persecution on account of . . . [her] religion . . . ."  Njenga, 386 F.3d at 339 (emphasis in original).  We review the determination that Langitan did not meet this standard for substantial evidence.  See id. at 339-40.  Under the substantial evidence test, we will reverse "only when the record evidence would compel a reasonable factfinder to make a contrary determination."  Aguilar-Solis v. INS, 168 F.3d 565, 569 (1st Cir. 1999).  Because the BIA adopted the reasoning of the IJ in its entirety, we review the decision of the IJ directly.  See Njenga, 386 F.3d at 338.

Langitan contends that the IJ's rejection of her withholding of removal claim was based on a selective reading of a State Department Report concerning religious tolerance in Indonesia.  We disagree.  The State Department Report contained mixed conclusions about the situation in Indonesia.  The Report recognized that there had been reports of civil strife between Muslims and Christians in certain parts of the country.  But it also noted that, during 2001, the Indonesian Government had worked to end much of the Muslim-Christian violence.  The IJ read the

[3]Langitan also sought relief under the CAT but does not here press any arguments relative to this claim.  We therefore consider the CAT claim waived.  See Mediouni v. INS, 314 F.3d 24, 28 n.5 (1st Cir. 2002).

Report as recognizing that religious violence was on the wane in Indonesia, and his reading was not unreasonable.

In any event, Langitan's testimony amply supports the IJ's conclusion that she was unlikely to face religious persecution if she returned to Indonesia. Langitan testified to only a single act of religiously motivated violence -- the rock throwing incident. Cf. Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005) (stating that generally the violence required to demonstrate an entitlement to asylum must be "systematic rather than reflective of a series of isolated incidents"). Moreover, she acknowledged that her son, a practicing Catholic, continues to reside in Indonesia, and she did not indicate that he is in any danger. See Aguilar-Solis, 168 F.3d at 573 ("[T]he fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return."); see also Khalil v. Ashcroft, 337 F.3d 50, 56 (1st Cir. 2003) (finding no well-founded fear of persecution where petitioner's sibling remained in country of origin without suffering persecution). Finally, Langitan admitted that the Catholic institutions with which she associated are currently operational. These facts provide substantial evidence to support the conclusion that Langitan is unlikely to face religious persecution upon her return to Indonesia.

Finally, Langitan contends that her removal proceeding was unfair. She bases this claim on the questioning by the IJ concerning her testimony about the hospital incidents -- questioning she describes as "aggressive." This argument was not raised either before the IJ or the BIA so we will not consider it. See Njenga, 386 F.3d at 338; Opere v. INS, 267 F.3d 10, 14 (1st Cir. 2001).

The petition for review is **dismissed** in part and **denied** in part.