# United States Court of Appeals

## For the First Circuit

No. 07-1413

KANNKOSAL OUK, ET AL.,

Petitioners,

v.

PETER D. KEISLER,[*]
ACTING ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Oberdorfer,[**] Senior District Judge.

Thomas Stylianos, Jr., Ilana Etkin Greenstein, Harvey Kaplan, Maureen O'Sullivan, Jeremiah Friedman, and Kaplan, O'Sullivan & Friedman, LLP, on brief for petitioner.
Robbin K. Blaya, Attorney, Office of Immigration Litigation, Peter Keisler, Acting Attorney General, and Anthony W. Norwood, Senior Litigation Counsel, on brief for respondent.

October 29, 2007

[*]Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Peter D. Keisler is substituted for former Attorney General Alberto R. Gonzáles as respondent.

[**]Of the District of Columbia, sitting by designation.

**STAHL**, **Senior Circuit Judge**.   The Board of Immigration Appeals (BIA) affirmed an Immigration Judge's (IJ's) denial of Kannkosal Ouk's claims for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).   Ouk,[1] a native and citizen of Cambodia, now petitions this court for review of the BIA's denial of his asylum claim.[2]   Because a reasonable fact-finder would not be compelled to conclude that Ouk has met his burden of proof to establish eligibility for asylum, we deny Ouk's petition for review.   However, we also note several deficiencies in the IJ's formulation of his credibility findings.

## I.

The IJ found Ouk credible.   Therefore, we relate the facts of the case as he testified to them.

Before leaving Cambodia in May 2003, Kannkosal Ouk was employed as a pharmacist by the Cambodian Ministry of Health, in the capital city of Phnom Penh.   Ouk was also an active member of the Sam Rainsy Party, a leading opposition party in Cambodia.   He testified that his duties as a party member included speaking with co-workers and others about the party, and recruiting them for membership.   He testified that this involvement led to two

---

[1]Ouk's wife, Phallikasreymoon Hun, and his son, Kosalvisal Ouk, both natives and citizens of Cambodia, are derivative applicants for asylum, based on Kannkosal Ouk's application.

[2]Ouk does not seek review of the BIA's denial of withholding of removal or protection under the CAT.

-2-

instances of persecution against him, which occurred in the lead-up to the 2003 Cambodian general elections.

First, in January 2003, as Ouk left work, he was met by two men on a motorcycle, wearing civilian clothing; Ouk testified that the men had threatening demeanors and that one of them appeared to have a gun at his waist, under his shirt. The men followed Ouk closely as he drove home on his motorcycle, and eventually the men motioned for Ouk to follow them. The men led Ouk to a secluded area near a temple and, upon arriving, told Ouk that if he did not stop supporting the Sam Rainsy Party, "he [would] have a problem."

The second incident occurred about one month later, in February 2003. Again, Ouk was riding his motorcycle in the evening when two men, also on a motorcycle, ordered him to follow them to the Olympic Stadium. In a secluded area near the stadium, the two men confronted Ouk, pushed his motorcycle to the ground, pointed their guns at Ouk, and asked him why he continued his involvement with the Sam Rainsy Party when he had already been warned to cease his activity. The men pushed Ouk to the ground, and began beating and kicking him. They hit him on the nose with a gun, and he lost consciousness. He woke up about an hour later and, realizing his motorcycle no longer worked, walked home, pushing the motorcycle with him. He did not seek medical care for his injuries.

-3-

Ouk testified that he "strongly believe[d]" that the men who attacked him on both occasions were members of the secret police of the ruling Cambodian People's Party.  However, he did not explain the reasons for this belief or offer any corroborating evidence.

Alarmed by the attack, Ouk, his wife, and young son fled to a nearby village.  Ouk did not return to his job after the attack.  The family sought tourist visas from the United States and entered with inspection at Los Angeles, CA, on May 23, 2003, three months after the second incident.  Ouk filed for asylum within the one-year time limit.

The Immigration Judge denied Ouk's asylum application and his other attendant claims, finding that Ouk did not show that the attacks against him were "[g]overnmentally orchestrated or condoned, rather than just isolated incidents of violence perpetrated by thugs who were in disagreement with the respondent's political philosophy."  The BIA affirmed the IJ's denial in a brief decision, on the grounds that the harm Ouk suffered did not amount to past persecution, and that his claim of future persecution was undermined by the lack of an objective basis for his belief that his assailants were from the government's secret police.  The BIA also refused Ouk's request to consider evidence regarding Cambodian gun control policy, because he failed to submit the evidence to the

IJ.[3]  Ouk now seeks review of the BIA's decision denying his asylum claim.

## II.

We review the BIA's denial of asylum for substantial evidence, and accept the BIA's findings of fact if they are supported by "'reasonable, substantial, and probative evidence on the record considered as a whole.'" Njenga v. Ashcroft, 386 F.3d 335, 338 (1st Cir. 2004) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).  We will reverse the decision below only if "any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  Where, as here, "the BIA's decision adopts portions of the IJ's opinion," this court will review "those portions of the IJ's opinion that the BIA has adopted."  Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004).

The petitioner carries the burden of proof to establish his eligibility for asylum.  Bocova v. Gonzales, 412 F.3d 257, 262 (1st Cir. 2005).  He can meet this burden by proving past persecution, which gives rise to an inference of future persecution, or by establishing a well-founded fear of persecution on account of his race, religion, nationality, membership in a

---

[3]Ouk, in his reply brief, seeks review of the BIA's refusal to consider this new evidence.  Because he did not raise the issue in his opening brief, however, it is deemed waived.  See United States v. Torres, 162 F.3d 6, 11 (1st Cir. 1998) ("[I]ssues raised for the first time in an appellant's reply brief are generally deemed waived.").  We also deem the other issues raised by Ouk in his reply brief to be waived, for the same reason.

particular social group, or political opinion.  Id.  "To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering."  Nelson v. I.N.S., 232 F.3d 258, 263 (1st Cir. 2000) (citations omitted).

Thus, our review of the decision below regarding whether Ouk suffered past persecution or has a well-founded fear of future persecution is highly circumscribed.  We can only reverse if the evidence compels the opposite conclusion.  In this case, because Ouk recounted only one instance of physical abuse, for which he did not seek medical treatment, a conclusion of past persecution is not compelled.  See, e.g., Bocova, 412 F.3d at 263 (evidence that petitioner was beaten twice by state police was insufficient to compel the conclusion that petitioner suffered past persecution).  Similarly, because Ouk presented only his own conclusory opinion to support his belief that the men who attacked him were government agents, the record does not compel us to conclude that he has a well-founded fear of future persecution.[4]  See Harutyunyan v.

_____

[4]This is not to say that an asylum applicant's testimony alone, recounting his belief that government agents attacked him, if found credible, would be an insufficient basis for a grant of asylum in the first instance, assuming the other requirements for asylum were met.  See 8 U.S.C. § 1158(b)(1)(B)(ii) ("The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee.").  In contrast, given our limited standard of review on appeal, neither the reports by human rights organizations of the Cambodian government's inaction with respect to politically motivated violence nor Ouk's slim evidence of

Gonzales, 421 F.3d 64, 68 (1st Cir. 2005) ("[P]ersecution always implies some connection to government action or inaction.").

Though we deny Ouk's petition for review of his asylum claim, we also note significant short-comings in the Immigration Judge's opinion with regard to his credibility findings.[5] These deficiencies, however, do not impact our decision to deny Ouk's petition for review because, given that the IJ ultimately found Ouk to be credible, we have based our denial on the facts as presented by Ouk.

The IJ stated several times in his oral decision that he found Ouk to be credible, yet he simultaneously questioned the "plausibility" of various events recounted by Ouk. At one point in the decision, the IJ stated:

> While I do find that there are aspects of the respondent's testimony which I find curious and troubling, to which I will address myself shortly, I have no basis upon which to find the respondent other then [sic] credible.

After questioning why Ouk did not receive medical care after the attack on him, the IJ stated:

---

government-led persecution compels the reversal of the denial of his asylum claim as to future persecution.

[5]Ouk characterizes these deficiencies as both an infirmity in the IJ's credibility finding and as a due process violation. Because he does not offer any legal basis for maintaining that the deficiencies constitute a due process violation, that claim is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

> Once again, I want to be clear that I have no basis for evaluating this testimony and concluding the respondent to be non-credible. Rather, in my evaluation I don't really believe it to be plausible nor is it convincing.

By making these statements, the IJ provided a muddled analysis of Ouk's credibility. The plausibility of a respondent's story is a factor that impacts the IJ's overall credibility finding. See 8 U.S.C. § 1158(b)(1)(B)(iii) (a credibility determination may be based on a variety of factors, including "the inherent plausibility of the applicant's or witness's account"). Therefore, it is contradictory to maintain, as the IJ did here, that, as to one individual testimonial element, a respondent's testimony is both credible and not plausible.

We also point out a second, similar malady in the IJ's decision. The IJ stated that, while it was "possible" that petitioner spoke with co-workers and others about the Sam Rainsy Party and attempted to recruit them, it was "simply not convincing that the respondent would take such a chance with co-workers who could expose him to superiors and cause the loss of his employment or some other impediment to the advancement of his career." It is ambiguous whether the IJ was making a finding specific to the particulars of Ouk; if so, his findings would have had more strength if he had explained why, in this particular case, it is unconvincing that Ouk himself would take such a risk. In failing

-8-

to articulate the particularized basis for his finding, the IJ's conclusion could be read as making a broad generalization that no one, including Ouk, would risk his employment in order to advocate for a political viewpoint or party. Such a statement is, on its face, simply incorrect. Indeed, at the heart of many successful asylum claims is a person who takes extraordinary risks in order to advance a political or social cause to which he is deeply committed. An IJ is free to find an asylum applicant's testimony not credible because he does not believe the applicant would take the risks he alleges to have taken, but "the IJ must, if he or she chooses to reject [petitioner's] testimony as lacking credibility, offer a specific, cogent reason for [the IJ's] disbelief." <u>Gailius</u> v. <u>I.N.S.</u>, 147 F.3d 34, 47 (1st Cir. 1998) (citation and internal quotation marks omitted). The IJ here did not do so.

## III.

For the foregoing reasons, we <u>deny</u> Ouk's petition for review.