Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 07-1726

JEAN GARDY DOMERCANT,

Petitioner,

v.

MICHAEL B. MUKASEY,
ATTORNEY GENERAL*,

Respondent.

ON PETITION FOR REVIEW OF ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Howard, <u>Circuit Judge</u>,
Stahl, <u>Senior Circuit Judge</u>,
and Siler,** <u>Senior Circuit Judge</u>.

Michael D. Greenberg and Law Offices of Michael D. Greenberg, on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Anthony W. Norwood, Senior Litigation Counsel, and Kathryn L. Deangelis, Trial Attorney, United States Department of Justice, on brief for appellant.

February 6, 2008

---

*Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Michael B. Mukasey has been substituted for former Attorney General Alberto R. Gonzales as the respondent herein.

**Of the Sixth Circuit, sitting by designation.

**STAHL**, <u>Senior Circuit Judge</u>.   After a hearing, an Immigration Judge (IJ) denied Jean Gardy Domercant's claims for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).   On appeal, the Board of Immigration Appeals (BIA) affirmed the IJ's decision.   Finding no error in the BIA's decision, we affirm the BIA's order and deny Domercant's petition for review.

I.

Domercant, a native and citizen of Haiti, entered the United States at the U.S. Virgin Islands on or about August 15, 2003.   On October 14, 2003, well within the one-year filing deadline, Domercant submitted an I-589 Application, seeking political asylum and withholding of removal.   Subsequently, the Immigration and Naturalization Service (INS) charged him with removability under § 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled.   Domercant conceded removability, but applied for asylum, withholding of removal, and protection under the CAT.   In support of his application for relief, he submitted a personal statement, his birth certificate, a membership card and letter from Mochrena, a Haitian political party, a Haitian driver's license and tax ID

card, his child's birth certificate, and a number of articles relating to country conditions in Haiti.[1]

At the hearing before the IJ, Domercant described three incidents of what he deemed politically motivated harassment, which he attributed to his membership in Mochrena, a minority political party in Haiti.[2] The first alleged incident occurred on April 25, 2002, after a customer accused Domercant of harboring anti-government sentiments because of remarks he made during a political discussion. Domercant testified that, on his way home from work that night, he was accosted by the same customer and two police officers, pushed to the ground, and kicked. He stated that, following the attack, he went to the police station and reported the incident, but the police would not help him. In August 2002, four men allegedly invaded Domercant's home and accused him of trying to destabilize the government. Domercant testified that he believed that these men were sent by the men who had attacked him in April. The final incident took place in late March 2003, when two men allegedly entered the home of a friend with whom Domercant

---

[1]The government objected to the admission of these documents because they had not been authenticated. The government further noted that, despite its requests, the originals of the documents were never turned over for forensic analysis. The IJ allowed the documents into evidence but, acknowledging the evidentiary shortcomings, informed Domercant that the documents would be given very limited weight.

[2]Domercant described Mochrena as "the Christian Movement for a New Haiti" and claimed that he became a regular member of the party in June 2002 because he agreed with its ideology of advocating peace, education, and work for all.

was staying[3] and beat both Domercant and his friend's mother. Domercant testified that the men threatened that "this was just the beginning." He also claimed that both he and his friend's mother received medical treatment for the injuries they sustained during the beatings. According to Domercant, he traveled to the Dominican Republic shortly after leaving the hospital and lived in Santo Domingo until he entered the United States in August 2003.

When questioned by the government about his involvement with Mochrena, Domercant admitted that he had never paid any party dues, attended any rallies or demonstrations, or voted in Haitian elections. Furthermore, he acknowledged that he was unaware whether any branches of Mochrena existed in the United States, whether Mochrena held three seats in the Haitian parliament, or which candidate Mochrena was supporting in the upcoming Haitian presidential election. He also demonstrated limited knowledge of the Democratic Convergence, a Haitian coalition of political parties of which Mochrena was a member.

Domercant also testified that he had a son, Christopher Domercant, who was born in the United States on April 10, 2003. He admitted that Christopher's mother, Marie Ambroise, told Domercant

---

[3]Domercant claimed that, after his home was invaded in August 2002, fear of further harassment forced him into hiding. He testified that he quit his job and moved in with a friend in September 2002. He stated that he stayed with this friend until January 2003, at which time he moved in with another friend. The third incident occurred about two months after Domercant moved in with the second friend.

that she was pregnant in September 2002, before she moved to the United States. He further disclosed that he communicated with Ambroise intermittently after she arrived in the United States. When the government questioned his failure to include Christopher on his asylum application, Domercant answered: "The reason I said that is because I wasn't quite sure. She [, Ambroise,] did tell me that she was pregnant but I had not proof." He also stated that he was not present for Christopher's birth and that he was not listed on the birth certificate. He denied the government's accusation that he came to the United States to be with Christopher and Ambroise.

In an oral decision, the IJ found that Domercant was not credible based on the following facts: (1) Domercant's statements regarding his political involvement were vague, indicated that he knew little about his alleged political party, and showed that he was uninterested in Haitian politics; (2) that he had offered conflicting testimony about whether he was for or against the ruling party of Haiti; (3) that he claimed he was in hiding while living with his friends in Haiti, but his asylum application neither listed the addresses of these friends nor indicated that he was ever in hiding; (4) that he testified he quit his job in 2002, but his application for asylum stated that he was employed until 2003; (5) that he failed to mention his child on his asylum application; and (6) that he lacked evidence to corroborate his

arrival in the United States, his alleged hospital stay, and his claim that he reported the incidents to the police. Because Domercant's testimony was not credible, the IJ denied Domercant's claim for political asylum.

Notwithstanding the adverse credibility finding, the IJ further held that Domercant's claim for asylum failed because he had neither established past persecution nor a well-founded fear of future persecution if returned to Haiti. According to the IJ, Domercant could not establish past persecution because he did not sufficiently link his political opinion to the attacks he described. Furthermore, the IJ determined that Domercant could have relocated within Haiti to avoid his perceived problems with his alleged persecutors. As to future persecution, the IJ concluded that Domercant's apparent disinterest and lack of knowledge regarding Haitian politics suggested that he had absolutely nothing to fear if he returned to Haiti. Having found that Domercant had not proven his eligibility for asylum, the IJ denied his concurrent claim for withholding of removal. His claim for CAT protection was likewise rejected because Domercant had offered no evidence that it was more likely than not that he would be tortured if forced to return to Haiti.

On appeal, the BIA upheld the IJ's decision in a per curiam opinion. The BIA agreed that Domercant was not credible, stating that the IJ's adverse credibility determination was based

on specific and cogent reasons manifest in the record. Specifically, the BIA discussed the discrepancies between Domercant's asylum application and his testimony, his lack of knowledge and involvement in Haitian politics, his inability to corroborate that he had received medical treatment after the alleged beatings, and his failure to articulate any reason why he could not safely relocate within Haiti.[4]  In addition, the BIA found that Domercant had presented no evidence showing "that anyone was looking for him for any reason."  Because the BIA disposed of Domercant's claims for asylum and withholding of removal on the ground that he was not credible, the BIA declined to address his persecution arguments.  The BIA also affirmed the IJ's finding that Domercant's claim for protection under the CAT failed. Accordingly, the BIA dismissed Domercant's appeal.  Domercant now petitions for review of the BIA's dismissal, arguing that its adverse credibility determination is not supported by the record.[5]

---

[4]The BIA's finding that Domercant could safely relocate appears misplaced because it is a factor typically considered when determining whether persecution has been established, not when assessing the credibility of an asylum applicant.

[5]On appeal, Domercant seeks review of the IJ's finding of adverse credibility.  He contends that we should review the findings of the IJ and not the BIA because the BIA merely adopted the findings of the IJ.  See Simo v. Gonzales, 445 F.3d 7, 11 (1st Cir. 2006) ("[T]o the extent that the [BIA] has adopted the decision of an IJ, we review the adopted portion of the opinion of the IJ as if it were part of the opinion of the [BIA]."). However, in this case, the BIA made its own findings with regard to Domercant's credibility and eligibility for asylum, withholding of removal, and CAT protection and did not adopt the decision of the IJ. Therefore, we will review the BIA's decision and treat Domercant's

-7-

II.

We review the factual findings of the BIA under a substantial evidence standard and will uphold the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Attia v. Gonzales, 477 F.3d 21, 23 (1st Cir. 2007)(citing Carcamo-Recinos v. Ashcroft, 389 F.3d 253, 256 (1st Cir. 2004)). We will not reverse a factual determination of the BIA unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Simo v. Gonzales, 445 F.3d 7, 11 (1st Cir. 2006).

An applicant for political asylum bears the burden of showing that he suffered past persecution, or that he has a well-founded fear of future persecution, on account of his political opinion. Ouk v. Keisler, 505 F.3d 63, 67 (1st Cir. 2007). Similarly, an applicant seeking withholding of removal on political grounds must demonstrate that it is more likely than not that he will be persecuted on account of his political opinion if he is forced to return to the country of removal. Pan v. Gonzales, 489 F.3d 80, 86 (1st Cir. 2007); 8 C.F.R. § 208.16(b)(2). The standard for a grant of withholding of removal is more stringent

arguments as if they were addressed to the findings of the BIA. See Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003) ("Ordinarily, Courts of Appeals review decisions of the [BIA], and not those of an IJ." (alteration in original)(internal citation omitted)).

-8-

than that of asylum.  Pan, 489 F.3d at 86.  As a result, "[a] petitioner who is unable to establish eligibility for asylum *a fortiori* fails to establish eligibility for withholding of deportation."  Settenda v. Ashcroft, 377 F.3d 89, 93 (1st Cir. 2004).

An asylum applicant must offer credible and specific evidence to support his claim of past persecution or well-founded fear of future persecution.  Bojorques-Villanueva v. INS, 194 F.3d 14, 16 (1st Cir. 1999).  If the testimony of an asylum applicant is found credible, that alone may be sufficient to meet the applicant's burden.  See 8 C.F.R. § 1208.13(a); see also Settenda, 377 F.3d at 93.  Conversely, "if the proffered testimony is not credible, it may be either disregarded or sharply discounted, depending on the circumstances."  Nikijuluw v. Gonzales, 427 F.3d 115, 121 (1st Cir. 2005).  Because the success of applicant's claim may be at stake, "an adverse credibility determination cannot rest on trivia but must be based on discrepancies that involve[] the heart of the asylum claim."  Bojorques-Villanueva, 194 F.3d at 16 (citation and internal quotation marks omitted).  "Further, the discrepancies or omissions relied upon ... 'must actually be present in the record ... and ... a convincing explanation for the discrepancies or omissions must not have been supplied by the alien.'"  Lin v. Gonzales, 503 F.3d 4, 7 (1st Cir. 2007) (second

and third alterations in original)(quoting <u>Zheng</u> v. <u>Gonzales</u>, 464 F.3d 60, 63 (1st Cir. 2006)).

On appeal, Domercant argues that the BIA's adverse credibility determination rested on erroneous findings. First, he contends the BIA's conclusion that he knew next to nothing about Haitian politics was incorrect because it was based on Domercant's unawareness of facts about Haitian politics that were never proven true by the government. For example, the government offered no evidence to prove that Mochrena was a member of the Democratic Convergence or that Mochrena held three seats in the Haitian parliament. On these bases, Domercant argues that it was improper for the BIA to find that he lacked knowledge of Haitian politics. However, the soundness of the factual predicates underlying the government's questions regarding Haitian politics is irrelevant. It is relevant that, in responding to these questions, Domercant displayed a general lack of knowledge regarding the subject, either because he was unaware of the facts being asserted, could not answer the questions asked, or did not attempt to refute any incorrect assertions. The record, therefore, supports the BIA's finding.

Domercant also argues on appeal that he adequately explained the discrepancies cited by the BIA in support of its adverse credibility finding. In defense of his omission of Christopher from his asylum application, Domercant maintains that,

at the time he filled out his application, he only knew that Ambroise was pregnant, not whether the child had been born or if he was the father. Moreover, he was not living with Ambroise and he is not listed as the father on Christopher's birth certificate. Be that as it may, given that Christopher was born in April 2003, and that the application was filled out in October 2003, Domercant may in fact have been aware of the child's birth. In addition, Domercant had ample time and opportunity to amend his asylum application between October 2003 and his hearing in October 2005, but he neglected to do so. Considering these facts, it was reasonable for the BIA to conclude that this discrepancy was not sufficiently justified by Domercant's testimonial explanation.

Additionally, Domercant explains that the inconsistencies between his asylum application and his testimony regarding his residence and the date he left his job were merely a result of mistranslation. To this end, he reminds us that he filled out his asylum application with the assistance of a translator because he is not fluent in English. He further asserts that, even if there were no translation issues, it would not be unreasonable for him to provide only his home address because most people would not consider the homes of friends that they are staying with temporarily to be their residences. However, the I-589 application explicitly asks the applicant to provide the last address he lived at before coming to the United States and information about his

residences during the previous five years. In response to these requests, Domercant provided only his home address as his last residence before coming to the United States and an address in St. Thomas as his present address. It was within the discretion of the BIA to accept or deny Domercant's explanation for failing to list the addresses at which he temporarily resided. See Chen v. Gonzales, 418 F.3d 110, 114 (1st Cir. 2005)("That the [BIA] might have accepted [the petitioner's] explanations for his inconsistencies is not to say [it] was required to do so."). Since nothing in the record compels us to conclude that the discrepancy was adequately explained, we will not disturb the decision of the BIA.[6]

We conclude that there was substantial evidence on the record to support the BIA's finding that Domercant was not credible. Consequently, we affirm the BIA's dismissal of Domercant's claims for asylum and withholding of removal.[7]

---

[6]Domercant sets forth an additional argument that the IJ erred in giving limited weight to his Mochrena membership card because it was not an "official" document and, therefore, did not require authentication under 8 C.F.R. § 287.6. He contends that it may have affected the IJ's finding that Domercant was not involved in Haitian politics. The BIA did not mention the card in its opinion and, therefore, the IJ's opinion on this matter is irrelevant.

[7]Domercant also contests the IJ's findings with respect to persecution. However, the BIA dismissed Domercant's claims for asylum and withholding of removal based solely on its finding that Domercant was not credible. It specifically refused to address Domercant's arguments related to persecution. Because we review the decision of the BIA unless it has adopted the decision of the IJ, we are without jurisdiction to consider Domercant's arguments regarding persecution. See Albathani, 318 F.3d at 373.

-12-

## III.

For the aforementioned reasons, the petition for review is denied.